**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 24-CR-006-GBW |
| JAVON WARREN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES' SENTENCING MEMORANDUM**

Javon Warren (hereinafter, "the Defendant" or "Warren"), contributed to society's ongoing battle with gun violence by straw purchasing firearms in the District of Delaware and lying on an ATF form to mask that he was purchasing firearms for others. Therefore, a period of 21 months incarceration—which is the top of Warren's advisory sentencing guidelines—is sufficient but not greater than necessary to accomplish the goals of sentencing.[1]

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.      Procedural History**

On January 11, 2024, a Grand Jury sitting in the District of Delaware indicted Warren on one count of False Statements in Connection with the Purchase of a Firearm, in violation of 18 U.S.C. § 924(a)(1)(A). (Amended Presentence Investigation Report ("PSR") ¶ 1.) Warren contested detention, but following a January 18, 2024, detention hearing, he was ordered detained by the Honorable Laura D. Hatcher, United States Magistrate Judge. (*Id.* ¶ 3.) On May 21, 2024, Warren pled guilty to the single-count Indictment before the Honorable Gregory B. Williams, United States District Judge. (*Id.* ¶ 4.)

---

[1] *See also* Sealed Attachment A, which the government routinely attaches to sentencing memoranda.

B.    **Factual Background**

The facts of this case are detailed in the Amended PSR.  (*Id.* ¶¶ 13-40.)  The parties do not dispute the recitation of facts.  Therefore, the government will only briefly review the facts to the extent necessary as they relate to arguments detailed below.  Further, the government agrees with the United States Probation Officer's calculations of the Defendant's sentencing guidelines. (*Id.* ¶¶ 48-56.)  Based on the Defendant's criminal history category of II, and a total offense level of 16, the Defendant's final guideline range, after acceptance of responsibility, is 15 to 21 months of incarceration.  (*Id.* ¶ 103.)

II.    <u>**GOVERNMENT'S SENTENCING RECOMMENDATION**</u>

The sentencing factors set forth in 18 U.S.C. § 3553(a) counsel in favor of a sentence of 21 months of imprisonment, as such a sentence is sufficient but not greater than necessary to meet the goals of sentencing.  18 U.S.C. § 3553(a).  This recommendation reflects the nature and circumstances of the offense, the Defendant's personal history and characteristics, and the need to provide adequate deterrence to both the Defendant and to society at large.

A.    **The Nature and Circumstances of the Offense Warrant a Sentence at the Top of the Sentencing Guidelines.**

False statements to a Federal Firearms Licensee ("FFL") in connection with the purchase of firearms is a decidedly dangerous crime.  It undermines the integrity of legal firearms sales by FFLs and can cause firearms to end up in the hands of individuals who Congress has decided should not possess them.  The Defendant's false statements were lies on multiple ATF Forms 4473 that he was the "actual transferee/buyer" of numerous firearms.  He was instead straw purchasing them for others.  These criminal lies can—and in Warren's case, did—lead to devastating consequences and actual violence.

2

As detailed in the PSR, between August 30, 2021, and March 22, 2022, Warren purchased twelve firearms from verified FFL dealers, but lied on multiple ATF Forms 4473 when he certified that he was the "actual transferee/buyer" of the firearms. (*Id.* ¶ 17.) Indeed, when law enforcement spoke with Warren, he could not definitively identify the location of any of the firearms. (*Id.* ¶¶ 20-24.) Multiple of these firearms were eventually recovered in connection with others' criminal activity. For example, a Smith & Wesson 9mm pistol Warren purchased in August 2021 was recovered during a car stop in April 2022, and was traced to an October 2021 attempted robbery and shooting in Milford, Delaware. (*Id.* ¶ 18.) A SAR Arms 9mm pistol Warren purchased in February 2022 was recovered in October 2022 in Chester, Pennsylvania during an arrest of an individual for a July 2022 aggravated assault. (*Id.* ¶ 26.) A Taurus model G2C Warren purchased in September 2021 was recovered in June 2023 by Dover Police Department officers during the arrest of a juvenile following a report of a series of attempted carjackings. (*Id.* ¶ 28.) And during separate vehicle stops of other individuals, law enforcement recovered additional firearms purchased by Warren including a Ruger 9mm pistol Warren purchased on October 15, 2021, (*id.* ¶ 19) and a Glock 43x Warren purchased on October 5, 2021 (*id.* ¶ 28).

Warren's online conversations further demonstrate his brazenness about gun trafficking and obtaining firearms for others. One such conversation involved Warren and a Facebook user, "RK Marshall." Between September 2021 and February 2022, they exchanged a series of messages where they discussed Warren obtaining firearms for Marshall in Warren's name. (*Id.* ¶¶ 35-38.) In mid-September 2021, Marshall wrote to Warren, "Bet I'm trying get a gun bro I would let you hold it bro give you the money 400 . . . in your name . . . I got people looking for me," to which Warren responded, "Yeah I proll ksn [sic]." (*Id.* ¶ 35.) During more gun-related

conversations throughout September and early October 2021, Warren offered to obtain a firearm for Marshall who expressed a desire to use it against someone – more specifically to "blow someone away."  (*Id.* ¶ 37.)  The conversation was as follows:

| | |
|---|---|
| Marshall: | I need you I need use the gun |
| Marshall: | Bro |
| Marshall: | Some one shit I will pay |
| Marshall: | Use it |
| Marshall: | One time |
| Marshall: | **I'm blow some one away** |
| Warren: | They xheap [sic] bro |

*Marshall then called Warren, but Warren did not answer.  The conversation continued:*

| | |
|---|---|
| Marshall: | Get me one how |
| Warren: | I ksn help u get it |
| Marshall: | How |
| Warren: | They sell em for 250 |
| Marshall: | Smh. Call |

*Following this message exchange, the two spoke on the phone.  (Id.)* (emphasis added).

### B.    The Defendant's Background and Personal Characteristics

According to PSR, the Defendant was born on August 29, 2000, and is currently 23 years old.  (PSR ¶ 74.)  When the Defendant was twelve years old, his cousin fell victim to gun violence and was murdered.  (*Id.* ¶ 77.)  According to Warren's mother, that traumatic event "severely impacted" him.  (*Id.* ¶ 83.)  Warren's mother further noted that because the homicide was the result of gun violence, she felt it was important that Warren attend the funeral.  (*Id.*)

The irony should not be lost on the Court that notwithstanding the trauma the Defendant experienced following his cousin's death, he has chosen a path of trafficking guns, which can, and do, end up in the wrong hands.  As the Defendant tragically experienced when he was twelve years old, those wrong hands can, and do, inflict acts of violence leading to horrific tragedy and devastated families and communities.

### C.    The Defendant's Criminal History

Although the Defendant is a young man, his past conduct demonstrates a propensity towards violence, attraction to firearms, and a lack of respect for law enforcement. (*Id.* ¶¶ 58-72.)

On October 5, 2022, law enforcement executed a search warrant at Warren's residence. (*Id.* ¶ 59.) From Warren's basement bedroom they recovered just under 200 grams of marijuana and a Remington 870, 20-gauge pump shotgun. (*Id.*) He was charged for possession of a tier 1 quantity of a controlled substance (*id.* ¶ 59), but charges related to possession of the gun were nol-prossed. (*Id.* ¶ 60.)

On October 6, 2022, the ***very next day***, the Defendant was observed in a park behaving aggressively towards several individuals.[2] (*Id.* ¶ 65.) As law enforcement approached the Defendant, he stated, "that cop ain't going to do nothing, f**k[3] him," and threatened to physically harm the officers. (*Id.*) The Defendant then refused the officers' verbal commands as they attempted to detain him. (*Id.*) Even after the Defendant was tased based on his failure to comply, he remained non-complaint and refused to be photographed and fingerprinted. (*Id.*)

As a result of the Defendant's criminal history, he has two criminal history points, and is a Criminal History Category II. (*Id.* ¶ 67.)

### D.    The Court Must Impose a Sentence Which Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense.

Making false statements on an ATF Form 4473 to facilitate the straw purchasing of firearms is a serious offense. In June 2022, Congress and the Executive Branch confirmed their

---

[2]  This incident was unrelated to the October 5, 2022, search warrant.

[3]  Full expletives have been omitted for the purposes of this memorandum.

commitment to combatting the devastating consequences that straw purchasers have levied on society when President Biden signed into law the Bipartisan Safer Communities Act ("BSCA"), which codified 18 §§ 932(b) and 933 and expressly restricted straw purchasing firearms. Given that the Defendant's conduct in this case predated the enactment of the BSCA, he was not eligible to be charged thereunder.[4] Notwithstanding, the enactment of the BSCA demonstrates that Congress views the straw purchasing of firearms as a serious offense, and therefore a top of the guidelines sentence is appropriate to send a similar message.

The Defendant's conduct is concerning and presents a serious risk of harm to others. While he was convicted of one false statement on an ATF Form 4473, his relevant conduct includes multiple other purchases of firearms for others. A four-point enhancement under USSG §2K2.1(b)(1)(B) is already included in the advisory guidelines; however, given that multiple guns traced to the Defendant were recovered in connection with serious crimes, it is obvious that these firearms are getting into the wrong hands, that the Defendant blatantly disregards the law, and that he values personal monetary profits over the safety of others.

### E.  Need for Deterrence

It is also evident that a sentence at the top of the sentencing guidelines range is necessary to protect society from the Defendant. Given the Defendant's conviction for the instant offense, he is now a convicted felon and is not permitted to legally purchase firearms. Notwithstanding,

---

[4] Notably in this case, the timing of the passage of legislation was on the Defendant's side. The scope of this investigation covered Warren's firearms purchases between August 30, 2021, and March 22, 2022. On June 25, 2022, President Biden signed into law the BSCA. However, since none of Warren's conduct took place after March 2022, neither 18 U.S.C. § 932(b) nor § 933 applies to Warren's conduct here, and he was not eligible to be charged under either statute. Convictions under 18 U.S.C. § 933 carry a 15-year statutory maximum penalty, which is significantly greater than the 5-year statutory maximum penalty for the 18 U.S.C. § 924(a)(1)(A) charge for which the Defendant was indicted. Moreover, the United States Sentencing Commission added to the revised Sentencing Guidelines effective November 1, 2023, Section 2K2.1(b)(5)(a), which provides an additional two-level increase for defendants who are convicted of 18 U.S.C. § 933(a)(2) or (a)(3). Based on the timing of the Defendant's conduct and the passage of this legislation, he avoided potential charges carrying significantly higher maximum penalties, and greater sentencing enhancements.

it is apparent that he is known in the community as a firearms trafficker and has a vast network where he could likely obtain firearms and/or transport them to others.  The Defendant needs to be specifically deterred from committing more crimes and selling more guns, and a 21-month sentence can help accomplish that goal.

General deterrence is also an important consideration.  Deterrence under Section 3553(a) is not limited to deterrence of a particular defendant.  *See United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation").  As noted *supra*, the Defendant is known within the firearms trafficking community and sentencing him at the top of the guidelines will be noted by others.  Like the message Congress sent with the passage of the BSCA that straw purchasing firearms is being taken seriously, a 21-month sentence will convey that lying on ATF Forms to facilitate the straw purchasing of firearms will not be tolerated.

## III.   CONCLUSION

In sum, the government submits that a custodial sentence of 21 months incarceration is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

By:   */s/ Eli H. Klein*
Eli H. Klein
Assistant United States Attorney

Dated: August 27, 2024

7